CARUTHERS, J.,
delivered the opinion of the Court.
Kfi.fa. from the Circuit Court of Washington county, in favor of the State of Tennessee for the use of Thos. D. Arnold, against Eurguson, Green, Clark & Crawford, for $119.71, was placed in the hands of the sheriff, on the 2d of March, *52 1859. The return was, no property found, but that John B. Linaweaver was garnisheed as the debtor of Clark, one of the defendants in the execution. At the next term he appeared, and upon his examination, made the following statement, which was reduced to writing:
“W. T. Battles and myself purchased a horse of J. P. Clark for $100, which we drove off South, and owed him for the same at the time I was garnisheed. We went together with horses to sell. Battles paid the debt to Clark after his return, without my knowledge. I returned first. I wrote to Battles I was garnisheed, before his return a short time. I don’t know whether he received my letter; and he paid the note to Clark after his return before I saw him. After he had paid the debt I saw him, and told him I was garnisheed, and would hold him responsible, if I had it to pay, for his portion. •Battles did not say anything about the letter I had written to him, nor did he say he did or did not know I was garnisheed. Some three weeks or more since, I had the foregoing conversa;tion with Battles, and it was only a short time before he paid ■the money, and he had not been long back from the South. Pie came back near the 1st of May. We had a settlement at this time, and I had lifted more of our notes than he had. We had previously given a number of joint notes, for horses we •had bought in partnership. I told Clark the next morning .after I was garnisheed about it.”
This is the entire statement, and the Court thought it did not make out a case of liability, and discharged the garnishee; •from which judgment this appeal was taken by the creditor. We think his Eton or erred in this conclusion. It does not appear upon what ground he based his opinion, but it is sustained in argument upon the ground that as the garnishment was not •served upon Battles, and it is not shown that he had any notice of the proceedings, he could, as partner, safely pay the debt of the firm to Clark, and thereby defeat the garnishment. Though this position may be plausible, we think it unsound. It was the debt of the two as a firm, and was subject to appropriation to the creditors of Clark by this mode of proceed *53 ing. The moment the garnishment was served, the debt, be" ing then due, passed out of the control of both the debtors and creditor, and, so to speak, was in custody of the law. Notice to one partner would bind both, and neither could avoid the binding force of the garnishment. The money of Clark in the hands of the firm was attached, and could not be extricated by one member of the firm, more than the other. The debt was seized in a legal mode, and Clark had no longer any right to receive it, and a payment to him would have no more effect to relieve them, than if it had been to any other person. The law had made them the debtors of the plaintiffs in the execution, instead of Clark. Battles was bound to know that his partner had become bound by law, to pay the debt to others, and not to Clark, in which event he would be no longer their creditor, and consequently a payment to him would be no discharge. It is the same thing as if he had paid the debt to Clark, after it had been previously discharged by his partner. The attachment of the debt by the creditors ,of Clark, substituted them to all the rights of the latter, and deprived him of any authority to receive the money, as fully as if it had been once paid to him by the garnisheed partner. The effect of the garnishment was to bind the debt, and place it out of the power of the parties, — no change could affect the creditors, as their right to the money was fixed by law, upon the state of facts at the date of service.
Independent of this view, which we think conclusive against the defence made, the circumstances pretty clearly show that Battles must have known of the existence of the garnishment, if that were necessary, and fraudulently attempted in this way to defeat it, and favor Clark. But let that be as it may, upon the other ground, we are of opinion that the judgment should have been against the garnishee. The partners will be left to adjust their rights as best they may, for this double payment of the debt. With that we have nothing now to do.
The judgment will, therefore, be reversed, and judgment rendered here against the garnishee for the proper amount.
*54 Since the disposition of the above case, a question has arisen upon the proper disposition of the costs of the garnishment, which it may he of some importance in the practice to settle. By the Code, sec. 3102,—
“ The garnishee shall have the pay, and be entitled to the privileges of a witness, and shall recover cost against the plaintiff, if the garnishment is not successfully prosecuted.”
This would seem to imply that if the plaintiff was successful in rendering him liable that he should pay costs. This section is, in substance, or was, doubtless, intended to adopt the act of 1826, ch. 17, Car. and Nich., 364. Under that act, this Court held in Huff v. Mills, 7 Yer., 42, 46, the garnishee was not subject to costs, although the judgment was against him, but that the plaintiff in the execution should pay them. We think there was no intention to change that rule by the Code. The justice and reason of the case accord with that construction. The garnishee is in no fault. He could not pay the debt he owed the execution debtor to his creditor, without the judgment of a Court. He fairly discloses the facts which establish his liability, and submits to the judgment of the Court. It is nothing to him to whom he pays the debt, provided he does it according to law, so as to get a legal discharge. The whole proceeding, and the result, is for the benefit of the execution creditor, and it is right that he should pay the cost, rather than the garnishee, who is in no wrong. The execution debtor cannot be taxed, because he is not a party to the proceeding. We think it right to adhere to the rule established in the case of Huff v. Mills, under the act of 1826, as we think it just, and the Code does not change it. How it would be if the garnishee had resisted and appealed from a judgment against him, or if the fund in his hands was more than sufficient to pay the execution and cost, we need not now say, as that is not the case in judgment.
The cost of both Courts will be taxed to the garnishing creditor.